### Cook, Assignee, *v.* Chittenden.

*(Circuit Court, E. D. Michigan.* November 2, 1885.)

CORPORATION—STOCKHOLDER'S LIABILITY—AGREEMENT TO TAKE STOCK—ACTION TO RECOVER ASSESSMENT.

Defendant agreed in writing to take 50 shares of stock in an insurance company, subject to a by-law that 20 per cent. of his subscription should be paid in cash at the time of the subscription and delivery of the certificate, and to a further oral condition that he should have the right to withdraw at any time before the agent left the city. He elected to withdraw, and the agent consented to release him; but his name was put upon the stock-book of the company. The company never demanded the installment, nor tendered the certificate, though it continued in business for about a year and a half. Twelve years after the subscription was made the assignee of the company in bankruptcy sued to recover an assessment upon the capital stock ordered by the bankrupt court. *Held,* that defendant never became a stockholder, and that he was not liable.

On Motion for New Trial.

This was an action by the assignee of the State Insurance Company, of Chicago, to recover an assessment upon its capital stock. The declaration averred in substance that the by-laws of the company provided that the capital stock should be divided into shares of $100 each, 20 per cent. of which was required to be paid in cash at the time of subscription and delivery of the certificate of stock, and that no further assessment should be made unless the original paid-up capital should become impaired by losses; that on the twelfth of July, 1870, the defendant subscribed for 50 shares of the stock, paid the assessment, and received the certificate; that in consequence of the losses sustained by the Chicago fire in 1871 the company was declared bankrupt, and plaintiff subsequently became its assignee; that in July, 1882, an assessment of $25 a share was made, by an order of the district court of Northern Illinois, for which this suit was brought. The plea was that defendant never became a stockholder, and therefore was not liable for the assessment. A verdict was directed for the defendant. The facts are stated in the opinion of the court.

*C. B. Lothrop* and *Otto Kirchner,* for plaintiff.

*C. A. Kent* and *F. A. Baker,* for defendant.

BROWN, J. The only evidence offered by the plaintiff tending to show the subscription was the stock-book of the company, in which the name of the defendant appeared in the handwriting of the secretary as the owner of 50 shares. This book was admitted upon the authority of *Turnbull* v. *Payson*, 95 U. S. 421, in which it was held that where the name of an individual appeared on the stock-book of a corporation as a stockholder the presumption was that he was the owner of the stock, and in an action against him as a stockholder the burden of proving that he is not a stockholder, or of rebutting that presumption, is cast upon the defendant. This was criticised as a mere *dictum*, but the point was directly involved in the case, and we think the decision is controlling.

Defendant then proved by his own testimony, and that of another witness who was employed in aiding the agent of the company to procure subscriptions to the stock, that he agreed to take 50 shares of the stock, provided he should be allowed to withdraw his subscription at any time before the agent of the company left the city. He did not know whether the condition was embodied in the subscription or not. Before the agent left the city he notified him of his wish to withdraw, to which the agent assented. The book containing the subscriptions was subsequently destroyed. The 20 per cent. was never demanded nor paid, nor was any certificate made out or delivered to him. How his name appeared upon the stock-book was not explained. At this time the company was already organized, and was free from debt, except its contingent liability upon policies already issued. The question, then, is not whether the defendant had the power to withdraw, after having made a valid and binding subscription, but whether his contract to take the shares ever took effect at all, or he ever became a stockholder. There are numerous cases in the supreme court which hold that if an individual actually subscribes for and agrees to take stock in a corporation, he will not be permitted, as against creditors, to set up fraudulent representations of the agent that he would only be responsible for a certain percentage of the subscription, even though he receives a certificate with the words "non-assessable" written across the face. *Upton* v. *Tribilcock*, 91 U. S. 45.

There is no doubt that one who receives a certificate of stock for a certain number of shares at a stated sum per share, thereby becomes liable to pay the amount thereof when called upon by the corporation or creditors; and in *Hawley* v. *Upton*, 102 U. S. 314, the court went still further, and held that such obligation attached to a party who had agreed simply to pay one-fifth of the par value of 10 shares received by him, though no certificate was ever issued. There is no intimation, however, in any of these cases that an actual subscription and intent to take stock is not necessary to create the relation of stockholder. A by-law of this company provided and required that 20 per cent. of the capital stock should be paid in cash at the

time of the subscription and delivery of the certificate. Whether the payment of this installment was a condition precedent to the valid organization of the company, or to the further liability of the stockholder, may admit of some doubt. There are a large number of cases upon the question, most of which turn upon the language of the charter. But conceding that if the certificate were tendered and refused an action would lie against the defendant for the installment, it does not follow that the subscription could not be canceled by mutual consent. It was evidently contemplated by the by-laws that the subscription, the delivery of the certificate, and the payment of the 20 per cent. should be practically contemporaneous acts, and there is no doubt in my mind that the agent who acted for the corporation in receiving the money of a subscriber had also authority to release him before the subscription was perfected; in other words, that if the subscription was not void by reason of the non-payment of 20 per cent. and the non-delivery of the certificate, it was at least voidable by the mutual assent of both parties. There were no creditors then in existence to be defrauded. The name of the defendant had not then been put upon the books of the company as a stockholder. He had never acted or held himself out as a stockholder by voting for directors or attending meetings.

But even if the agent had no authority either to receive a conditional subscription, or to release the defendant from his obligation to take the stock, the failure of the company for the 17 months which elapsed before its bankruptcy to insist upon the defendant receiving the certificate and paying his installment was a ratification of the agent's acts, and conclusive evidence that he never was looked upon as a stockholder. The only case to which my attention has been called which is supposed to conflict with this view is that of *White Mountains R. Co.* v. *Eastman,* 34 N. H. 124. In this case defendant's intestate agreed to take 30 shares of the capital stock of a railroad. Before his death 13 assessments were ordered by the directors, of which due notice was given the intestate, and it appeared that he acted as one of the directors during the time of making the assessment, and was present at a meeting of the board when 10 of the 13 were ordered. In defense, a paper was introduced, signed by a clerk of the corporation, and contemporaneous with the subscription, in which, in consideration of his taking the 30 shares, the corporation agreed to release him from 25 of said shares, or such portion thereof as he might within one year elect to withdraw from his subscription; and if he had been assessed and paid anything on those shares that he elected to be released from, such payments should be allowed him on the shares that he should retain in said corporation. It was further shown that the subscriptions of the directors were so taken in order to show as large a subscription as possible at a hearing before the railroad commissioners upon the question of the location of the road between this and another railroad corporation, and also to in-

duce other persons to subscribe. It also appeared that the board extended the time year after year for the election to be made by the directors whether they would or not diminish the number of shares for which they would be accountable, and it was admitted that the defendant, as administrator of Eastman, gave notice to the corporation of his election not to take 25 of the 30 shares subscribed by him. The court held that if no person was to be affected by the contract but the parties themselves, it would be competent for them to make an agreement for the reduction in the shares, and that the two writings might be considered both as parts of the same agreement, but that they should be regarded as separate and independent contracts whenever it was necessary to so regard them to protect innocent third parties against the fraud attempted to be practiced upon them by means of it. The court held the agreement for a reduction of the shares to be void, and in delivering the opinion observed:

"The fraud in this case consists not in the fact the parties agreed that the intestate should have the right to repudiate his subscription to a certain extent, but in suppressing that material feature in the agreement, and in holding out to others as their contract one which speaks in very different terms from that which, in fact, they made. If the conditional character of the subscription had appeared upon the subscription book itself, by inserting the provision that the intestate was at liberty thus to reduce his subscription, no person could have been deceived, and the contract would undoubtedly have been valid. The parties, for the purposes of deception, severed and disconnected the conditional stipulation from the contract, so as to render it on its face an absolute engagement by the intestate to pay for the thirty shares, and in this form held it out to others as their true contract."

The case under consideration obviously differs from this in the facts that the defendant never perfected his subscription by taking his certificate and paying his first installment, and never acted or held himself out as a stockholder, and there was not the slightest evidence of an intent on his part to defraud, or anything to warrant the belief that defendant's name was ever used as an inducement to other persons to subscribe. The case of *Melvin* v. *Lamar Ins. Co.*, 80 Ill. 446, is equally wanting in analogy. In this case the defendants took 5,500 shares of stock in an insurance company, paid 20 per cent. down in cash, and received certificates. The agreement under which they took the stock provided that they might, at their option, surrender it, when the certificates would be canceled and the money repaid. Subsequently all this stock was surrendered and canceled. Meantime, however, defendants were held out as large stockholders. This enabled the company to obtain the proper certificate from the state auditor's office and to procure other subscribers to a large amount. The transaction was held to be a fraud, partly upon the authority of the New Hampshire case, which it much resembles, but for the same reasons is not controlling here.

The case, then, is substantially this: The defendant agreed to take 50 shares of stock, with the understanding that he might withdraw

within a certain time if he chose. He elected to withdraw within this time, and notified the agent of the company, who assented to such withdrawal, and released him. The directors of the company made no effort during the life of the company to collect the installment that should have been paid, or to tender him a certificate. Twelve years thereafter, and long after the statute of limitations had run against any action to recover the original assessment, he is sought to be charged as a stockholder. The attempt to hold him as such is so manifestly unjust that we feel no difficulty as to the proper disposition of the case. The motion for a new trial will therefore be denied.